ORIGINAL

Of Counsel:
DAVIS LEVIN LIVINGSTON

| | |
|---|---|
| MARK S. DAVIS | 1442-0 |
| mdavis@davislevin.com | |
| MICHAEL K. LIVINGSTON | 4161-0 |
| mlivingston@davislevin.com | |
| LORETTA A. SHEEHAN | 4160-0 |
| lsheehan@davislevin.com | |
| MATTHEW C. WINTER | 8464-0 |
| mwinter@davislevin.com | |
| CLARE E. CONNORS | 7936-0 |
| cconnors@davislevin.com | |

851 Fort Street, Suite 400
Honolulu, Hawai`i 96813
Telephone: (808) 524-7500
Fax: (808) 356-0418

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 22 2013

at 3 o'clock and 45 min. P.M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ROBERT CARL AND SUNU CARL, | CIVIL CV.13 00410 JMS BMK |
| | (FEDERAL TORT CLAIMS ACT) |
| PLAINTIFFS, | |
| | COMPLAINT AND SUMMONS |
| VS. | TO ANSWER COMPLAINT |
| UNITED STATES OF AMERICA, | |
| DEFENDANT. | |

## COMPLAINT

COME NOW Plaintiffs above named, by and through their attorneys, DAVIS LEVIN LIVINGSTON, and for a cause of action against the United States of America, allege and aver as follows:

## INTRODUCTION

1. This Complaint is filed pursuant to the provisions of the Federal Tort Claims Act, Title 28, United States Code §§ 1346(b), 2671, *et seq.*, against the United States of America for injuries and damages sustained by Robert Carl ("Mr. Carl") and his wife Sunu Carl ("Mrs. Carl") resulting from the negligent medical decision by staff at Tripler Army Medical Center to perform robotic assisted laparoscopic prostatectomy ("RALP") surgery on Mr. Carl without providing informed consent as to the known complication of post-operative blindness associated with prolonged surgical time, and prolonged steep Trendelenburg positioning utilized during RALP surgery. All staff members involved in this negligent decision were employed at all relevant times by the United States of America and are hereinafter referred to collectively as "Defendant." As a direct and proximate cause of Defendant's negligence, Mr. Carl underwent a RALP surgery and suffered the disastrous complication of near total post-operative blindness. Mr. Carl also emerged from the surgery impotent and incontinent. This injury has left Mr. Carl totally and permanently disabled,

2

emotionally devastated and unable to maintain an intimate relationship with his wife. He is totally reliant on his wife, son and other loved ones; in need of medical, rehabilitative and life care.

## JURISDICTION

2. This action arises under the Federal Tort Claims Act, 28 USC §§ 1346(b), 2671, et seq. ("FTCA"). Mr. Carl was a resident of the State of Hawai`i at the time of Defendant's negligence, and still currently resides within the State of Hawai`i.

## PARTIES

3. Defendant's negligence occurred in the City and County of Honolulu, State of Hawai`i.

4. Claimant Robert Carl (hereinafter "Mr. Carl") was a resident of Honolulu County, State of Hawai`i, at the time of Defendant's negligence.

5. Claimant Sunu Carl is the wife Robert Carl. At all times relevant to this action, Sunu Carl was a resident of Honolulu County, State of Hawai`i.

6. At all relevant times, the Tripler Army Medical Center ("Tripler"), was a hospital owned and operated by Defendant United States of America and their personnel who injured Plaintiffs through their negligence, as hereinafter alleged, including but not limited to Dr. Joseph Sterbis, were acting within the course and scope of their employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiffs filed their claims against the United States of America for personal injury on December 28, 2010, within the statutory period prescribed by the FTCA. The United States of America acknowledged receipt of Plaintiffs' FTCA claim forms on January 19, 2011.

8. As of the date of the filing of this Complaint, the United States had not taken final administrative action on the Plaintiffs' claims and, therefore, this suit is timely filed pursuant to the provisions of the FTCA. Plaintiffs have exhausted all administrative procedures and their Complaint is timely filed.

## FACTUAL ALLEGATIONS

9. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1- 8, above, as if fully set forth herein.

10. Mr. Carl was diagnosed with prostate cancer in April, 2010. His past surgical history included a tympanoplasty on the right ear.

11. Mr. Carl was referred to the urology clinic at Tripler Army Medical Center in April, 2010 for evaluation of persistent hematuria thought to be due to kidney stones. He was taking Cardura and Proscar for benign prostatic hypertrophy (BPH). On work-up for BPH, he was found to have a nodule on the left lobe of the prostate and elevated PSA levels.

12. Mr. Carl's pretreatment prostatic specific antigen (PSA) level was noted to be 12.7 ng/ml.

13. Mr. Carl underwent a prostate biopsy on April 28, 2010, at Tripler with a Gleason score of 4+5 CaPT2a (2/12 scores) and was diagnosed with adenocarcinoma of the prostate.

14. Surgery was initially set for May 21, 2010, but was cancelled when Mr. Carl was found to be in atrial fibrillation.

15. Mr. Carl was admitted to Tripler on May 21, 2010, for one day, after his atrial fibrillation converted to a normal heart rhythm and was cleared for surgery which was rescheduled to June 10, 2010.

16. Mr. Carl had normal vision prior to surgery at TAMC on June 10, 2010, and only used glasses for reading.

17. On January 8, 2010, Mr. Carl had an eye examination at TAMC by ophthalmologist Dr. Ming Chen, who documented normal intraocular pressures prior to surgery.

18. On June 3, 2010, Mr. Carl went to Tripler for a pre-op visit at the adult medical clinic at Tripler and was evaluated by Sandra K. Noon, DO (internal medicine). Mr. Carl was cleared for surgery by Dr. Noon.

19. On June 7, 2010, Mr. Carl went to the urology clinic at Tripler for a pre-operative visit and was evaluated by resident physician Dr. Daniel Morilla.

Dr. Morilla reviewed Mr. Carl's medical history, his labs, X-rays, and medications. Mr. Carl was cleared for surgery by Dr. Morilla on June 10, 2010.

20. Dr. Morilla did not inform Mr. Carl of the known complication of post-operative blindness after robotic prostatectomy surgery. Mr. Carl was told that surgery by "robot" resulted in better outcomes to avoid injuries to nerves that control impotency and incontinence.

21. Mr. Carl met his surgeon Dr. Sterbis for the first time on the day of surgery. At the time of the surgery, a significant and well documented complication of robotic prostatectomy surgery included blindness but only in instances in which the surgery lasts for an extended period longer than five hours. Blindness is caused by the increased intraocular pressures resulting from the tilted positioning used during the surgery. Blindness is a "serious complication" and should have been part of the informed consent disclosure made to the patient which would have led to a discussion of the projected length of the surgery and the skill and prior experience of the surgeon, which is a factor in predicting length of surgery. Or it would have led to a discussion of prophylactic means including monitoring of the intraocular pressure or alternative positioning. The surgeon with the more expertise can perform the same robotic surgery better and faster than one with less experience.

22. Dr. Sterbis did not disclose to Mr. Carl the known complication of blindness following RALP surgery. Dr. Sterbis did not inform Mr. Carl of the positioning that would be utilized for the surgery. In fact, Dr. Sterbis confessed to the Plaintiff that he had not been aware of the prior cases resulting in blindness.

23. On June 10, 2010, Mr. Carl underwent RALP surgery by Dr. Joseph Sterbis and Resident Dr. John Musser at Tripler.

24. The anesthesia record showed that Mr. Carl was taken into the OR at 7:30 a.m., and came out of the OR to PACU at 2:55 p.m.

25. Mr. Carl's surgery lasted for 6 hours and 45 minutes. Surgeons who are proficient in RALP surgeries can perform the operation in 2.5 hours.

26. When Mr. Carl woke up in the recovery room he had extreme facial swelling and he was unable to see.

27. Mr. Carl was evaluated by Tripler ophthalmologist Dr. James Michael Olson who confirmed post-operative blindness. Mr. Carl experienced visual hallucinations known as "Charles Bonnet Syndrome."

28. An MRI was ordered post-operatively on June 11, 2010. The results of the MRI were negative.

29. A Neuro-opthalmology consultation was ordered on June 17, 2010 and conducted at Straub Clinic and Hospital by Dr. Scott Kortvelesky.

30. Dr. Kortvelesky diagnosed Mr. Carl with posterior ischemic optic neuropathy secondary to steep Trendelenburg positioning in the operating room at Tripler.

31. Posterior ischemic optic neuropathy is a permanent medical condition for which there is no treatment or cure.

32. Mr. Carl was discharged from TAMC on June 21, 2010, and continued treatment as an outpatient. Post-operatively his PSA levels returned to normal and are still within normal limits as of July, 2013.

## FIRST CLAIM FOR RELIEF
## MEDICAL NEGLIGENCE AND INFORMED CONSENT

33. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-32, above, as if fully set forth herein.

34. At all times relevant hereto, Defendant owed a duty to Plaintiffs to exercise that degree of care, skill and diligence ordinarily exercised by such health care providers in the application of their skills and the performance of their profession under similar circumstances.

35. Dr. Sterbis did not meet with Mr. Carl during the pre-operative examination conducted on June 7, 2010, which was conducted by Resident Physician Dr. Daniel Morilla.

36. Dr. Sterbis met Mr. Carl for the first time on the day of surgery June 10, 2010.

37. At the time of surgery on June 10, 2010, the applicable standard of care required that Mr. Carl be given an appropriate pre-operative counseling as to the risks and benefits of RALP surgery to including the expected length of surgery, the type of positioning during surgery, and all known complications of surgery, including post- operative blindness. The appropriate standard of care under the Hawai`i informed consent statute would have demanded a discussion of alternative treatments including open prostatectomy.

38. On June 10, 2010, Dr. Sterbis did not disclose to Mr. Carl that he would be placed in steep tilting Trendelenberg position during the surgery.

39. On June 10, 2010, Dr. Sterbis did not disclose to Mr. Carl the number of surgeries he had performed. He failed to do so until the post-operative visit conducted at Tripler after Mr. Carl had gone blind.

40. It is the surgeon's responsibility to discuss issues related to prolonged operative time with the patient and any potential complications relating to extended operative time.

41. As a result of the surgery and the physicians' breach of the standard of care Mr. Carl is legally blind, and has only shadow recognition with the right eye, and central vision with the left eye. Mr. Carl has permanent stress incontinence

related to the surgery, and permanent erectile dysfunction that prohibits intimacy with his spouse.

42. Prior to June 2010, post-operative blindness was a known complication of RALP surgeries reported by other military hospitals including Walter Reed Army Medical Center.

43. The medical providers at Tripler knew or should have known that posterior ischemic optic neuropathy and post-operative blindness is a complication of RALP procedures that extend beyond a reasonable period of time. Informed consent should have been provided to Mr. Carl pre-operatively.

44. Other Studies have shown that prolonged operative time is an independent predictor of increased intraocular pressure during robotic radical.

45. In 2009 a published article appeared on the subject of perioperative visual loss describing the mechanism of eye injury due to ischemic optic neuropathy confirming length of surgery was an independent factor in perioperative vision loss.

46. The American Association of Anesthesiology ("ASA") began collecting data on post-operative blindness as early as 1999. The ASA has acknowledged that post-operative blindness has been associated with prolonged operative times and with Trendelenberg positioning in the operating room.

47. In 2006, peer reviewed journals reported 93 cases of postoperative visual loss which were reported in patients with surgery due to high blood loss, prone position or prolonged anesthesia time.

48. Post-operative blindness is a well-known complication of prolonged surgery, prolonged anesthesia time, and specifically in prolonged steep Trendelenberg positioning to include RALP surgery and therefore the standard of care requires that it must be disclosed as a known complication of the surgery. In addition to the blindness, Plaintiff suffered incontinence and impotency, the very complication the RALP surgery was designed to avoid.

49. As a direct and proximate result of the Defendant's actions as aforesaid, Mr. Carl has suffered severe, debilitating and permanent injuries, and is entitled to recover compensation for his great physical pain and suffering; extreme emotional distress, depression, anxiety and mental anguish; loss of enjoyment of life; permanent disfigurement; permanent and total disability; loss of consortium; past and future economic loss; and for the cost of past and future medical, rehabilitative, and life care.

## SECOND CLAIM FOR RELIEF
## NEGLIGENCE

50. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-49, above, as if fully set forth herein.

51. The actions of Defendant as heretofore alleged were negligent, in violation of appropriate standard of care.

52. As a direct and proximate result of the Defendant's actions as aforesaid, Mr. Carl has suffered severe, debilitating and permanent injuries, and is entitled to recover compensation for his great physical pain and suffering; extreme emotional distress, depression, anxiety and mental anguish; loss of enjoyment of life; permanent disfigurement; permanent and total disability; loss of consortium; past and future economic loss; and for the cost of past and future medical, rehabilitative, and life care.

### THIRD CLAIM FOR RELIEF
### CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND LOSS OF CONSORTIUM AS TO MRS. CARL

53. Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-52, above, as if fully set forth herein.

54. As a direct and proximate result of Defendant's negligence which resulted in catastrophic injury to Mr. Carl, as aforesaid, Mrs. Carl has suffered and will continue to suffer severe mental and emotional anguish and distress, and loss of consortium for which she is entitled to recover compensation.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendant United States of America for general and special damages in an

amount to be proved at trial. Plaintiffs further pray that they be awarded their costs of suit and such other and further relief as the Court deems just and proper.

DATED:  Honolulu, Hawai`i, August 22, 2013.

MARK S. DAVIS
MICHAEL K. LIVINGSTON
LORETTA A. SHEEHAN
MATTHEW C. WINTER
CLARE E. CONNORS

Attorneys for Plaintiffs